IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No: 4:21-cr-00173-SAL |
| vs. | **<u>SENTENCING MEMORANDUM</u>** |
| **HART WILLIAM GROW** | |

On November 28, 2021, Defendant Hart William Grow pled guilty to sexually trafficking Minor Victim 1 and sexually coercing and enticing Minor Victim 2. The United States submits this memorandum in support of a significant sentence in this case: 327 months, or the high end of the applicable Guidelines range, to be followed by lifetime supervision. Such a sentence is warranted for the reprehensible conduct here, among other reasons, to reflect the seriousness of the offense, to adequately deter criminal conduct by this defendant and others like him, and to protect the public from further crimes by Grow.

I. **BACKGROUND.**[1]

From his home office in Arizona, Grow sexually exploited and trafficked children in South Carolina and elsewhere. His operation, while deeply atrocious and far-reaching, was relatively simple. Grow would pretend to be a teenager, usually a female, on various internet message boards to lure his minor victims. He targeted young girls who were often discussing, or seeking guidance about, their sexual identity. Under a false persona, Grow would offer solace and comfort to build a relationship over social media that he would contort into demands of sexually heinous actions. A search of Grow's electronic devices revealed images of, or sexual conversations with, at least

---

[1] The PSR in this case lays out the facts in some detail, and the Government agrees with those factual summaries. Thus, for the purpose of this memorandum, the Government highlights the most relevant facts and other key information from the discovery in the case.

23 individuals confirmed to be minors, and hundreds of other images, videos, and contacts with individuals who appeared to be minors.[2] Further, at least one of the social media accounts from which Grow engineered his sexual exploitation of children was registered in 2016 from an address associated with Grow, and the account has been active since that time.

Grow used the same general scheme against both minor victims in this case.

A.      **<u>Minor Victim 1.</u>**

Minor Victim 1 was about to turn 16 years old when Grow, posing online as a 17-year-old girl named Hannah, found her on a message board discussing her feelings about her sexual identity. Grow knew Minor Victim 1's age and offered a support system for her, which he used to manipulate Minor Victim 1 into having feelings for "Hannah." Exploiting these feelings, Grow convinced Minor Victim 1 to enter into a sexual dominant/submissive relationship, and to send him sexually explicit images and videos. This, however, was not enough to satiate Grow's cruel pleasures. He began pressuring Minor Victim 1 to have sex with men and send recordings of those encounters to him. Minor Victim 1 both feared and wanted to please "Hannah." Minor Victim 1 also knew that "Hannah" had numerous sexually explicit images of her and knew where she lived. Minor Victim 1 was hopeless, scared, and trapped. She relented.

Minor Victim 1 lived wither her parents in Myrtle Beach, and Grow would traffic her while her parents were away or were asleep down the hall. In sexually trafficking Minor Victim 1, Grow initially posted images on message boards offering Minor Victim 1 up to adult males for sex in exchange for the adult males actively engaging in the production of videos of the sexual acts, and

---

[2] The information presented in this memorandum is limited to information known to the Government or discovered by the Government outside of any proffered statements by Grow. To the extent this memorandum references additional victims known to the Government outside of any proffered statements by Grow, that information is used to illustrate Grow's ongoing course of conduct. These victims are being notified and it will be up to the various jurisdictions whether to prosecute Grow for any substantive offenses.

ensuring those videos were sent to Grow. Among the first customers was co-Defendant Theodore Woolings Bye, III. Bye became infatuated with Minor Victim 1, and he began effectively acting as the middleman for Grow. Although Bye also knew Minor Victim 1's age, he would nonetheless arrange for men to have sex with her in exchange for the men agreeing to engage in the production of sexually explicit videos to be sent to Grow. Further, Bye would make sadistic videos of Minor Victim 1 for Grow and would himself use Minor Victim 1 as his own sexual plaything.

Among the encounters arranged by Bye were those with co-Defendants Sanadin Mohamed Elrayes and Charles Joseph Spillane. Each of these men eagerly responded to Bye's solicitation, agreed to actively engage in the production of sexually explicit videos with Minor Victim 1 to be sent to Grow, and in exchange for this agreement they were given the opportunity to have sex with Minor Victim 1. Although there is evidence in the record that Elrayes and Spillane were told Minor Victim 1 was 18, the facts and surrounding circumstances show neither Elrayes nor Spillane spent a second alone with Minor Victim 1 as Bye was an active participant in their sexual congress. Spillane nor Elrayes ever asked if Minor Victim 1 was a willing participant and neither ever asked if she was OK. Spillane and Elrayes plotted their fantasies exclusively with Bye. In their messages with Bye, they reveled in the opportunity to do what they pleased with Minor Victim 1 with little regard to her willingness or age.

These four Defendants debased, abused, and exploited Minor Victim 1 for the sake of their own sexual pleasure. From this inexperienced child, they stole her first love, her virginity, and her dignity.

B.  **Minor Victim 2.**

For Grow, Minor Victim 1 was only part of his pattern of monstrous conduct against children. Minor Victim 2 was a 15-year-old living in Irmo, South Carolina, when she met "Terry,"

another Grow creation. Posing as a 17-year-old girl, Grow again built a relationship with his victim, and used that relationship to require her to be obedient and follow his rules. As was the case with Minor Victim 1, Grow knew where Minor Victim 2 lived and coerced her into committing a multitude of appalling sexual acts, and then sending Grow videos of these acts. These actions including forcing Minor Victim 2 to engage in sexual activity near family members.

Grow is a skilled manipulator of children who was able to identify Minor Victim 2's trauma and use it to manipulate her. His control over Minor Victim 2 was total. For example, evidence from Grow's phone revealed that in addition to his sexual coercion, he would force Minor Victim 2 to send her report card to him for his review and approval. Minor Victim 2 has attempted suicide on two occasions. At least one of these suicide attempts coincided in time with Grow's sexual exploitation of Minor Victim 2, and her family notes that Grow's abuse was a direct cause of that suicide attempt.

For the following reasons, the Government respectfully requests that the Court issue a sentence at the top end of the Guidelines range, and the Government submits that a such a sentence is sufficient but not greater than necessary to achieve the purposes of punishment as set forth in 18 U.S.C. § 3553.

## II. A SUBSTANTIAL, HIGH-END GUIDELINES SENTENCE IS APPROPRIATE.

### A. Section 3553(a) Factors.

The sentencing statute, 18 U.S.C. § 3553(a), requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[3] In order

---

[3] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

to determine the "particular" sentence to impose, the Court must consider the familiar statutory factors listed in §3553(a)(1)-(7). Two of the statutory factors that the Court must consider are (1) the advisory guidelines range set by the Sentencing Guidelines and (2) the Commission's policy statements are factors to be considered. *See* §3553(a)(4) and (a)(5). Further, the Advisory Sentencing Guidelines "should be the starting point and the initial benchmark" in determining the appropriate sentence. *See Gall v. United States*, 522 U.S. 38 (2007). Here, as explained below, the § 3553(a) factors weigh in favor of a sentence that is no less than the high-end of the Guidelines range with lifetime supervision to follow.

## B. Nature of Offense and History and Characteristics of Defendant – §3553(a)(1).

### i. Nature of Offense

Grow's criminal offenses were premeditated and meticulously planned. As noted above, Grow made a practice of participating in internet forums frequented by troubled teens looking for children whom he might be able to groom into sending him pornographic images or into human trafficking. This was not new behavior for him.

Once Grow found Minor Victim 1 and Minor Victim 2, he persuaded each of them to communicate with him privately. Over the next several months he forced each of them to produce numerous graphic sexual videos, and in the case of Minor Victim 1 he forced her into the world of sex trafficking. The PSR outlines much of Grow's depraved conduct, but the Government further highlights the following conduct for each of the minor victims.

As to Minor Victim 1, Grow forced her to endure pain, humiliation, and fear to please his sexual desires. *See* PSR ¶¶ 42, 44, 80. This soon evolved into sexual trafficking, where her first sexual encounter was being picked up by a man selected by Grow. PSR ¶ 36. He collected her just down the road from her home, anally raped her, and returned her to a friend's home. *See* PSR

¶¶ 36, 42, 65. Bye was the next customer. He picked her up at the home she shared with her parents, took her virginity, and sent those videos to Grow. *See* PSR ¶¶ 47, 68, 80. Recovered messages confirm Grow demanded she make content whenever she was with Bye, and that Bye began trafficking Minor Victim 1 on Grow's behalf. *See* PSR ¶¶ 32, 53(c), 56(a). Within days of Grow's direction that she make content with Bye, the following images and videos were produced:

- An image of Minor Victim 1 fully nude with her genitals exposed and the word "WORTHLESS' written in blue marker across her lower abdomen. The upper area of her vaginal area had numerous open cuts. *See* PSR ¶ 52(e).

- Several videos of Bye inserting a safety pin into Minor Victim 1's vagina and pinning her vaginal lips together. *See* PSR ¶ 52(bb)-(dd). She expressly says she has changed her mind and did not want to engage in the activity. *Id*. Although not referenced in the PSR, the Government has viewed the video and can represent that when Minor Victim 1 begins to express her desire to stop, Bye tells her she should engage in the activity for Hannah.

Grow's grooming of Minor Victim 1 occurred under her parents' nose, and she was snuck out of her home to engage in sex trafficking. *See* PSR ¶¶ 31, 47, 48, 68.

As to Minor Victim 2, Grow's manipulation was equally reprehensible. From afar and through the internet, he sexually abused this child and forced her to record her own torment. This included having her masturbate with her own toothbrush, calling her a "slut", and having her put her underwear into her vagina and into her mouth. *See* PSR ¶¶ 90(c), (d), (e), (f). Even more sickening, Grow would often require Minor Victim 2 to perform sexual activities near her family members, and sometimes implicitly involve them in the sexual activity. In a most glaring example, one video sent to Grow shows Minor Victim 2 masturbating while her family watched television, placing vaginal secretions on a Sprite can, and then filming her brother drinking from the can. *See* PSR ¶ 90(h).

There may be no crimes worse than sexual abuse of a minor. Here, Grow engaged in extensive emotional manipulation of vulnerable children whom he targeted online. This type of

abuse and manipulation has far-reaching effects on the development of the child that may never be fully understood. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (affirming as reasonable a 100-year sentence for a first offender who sexually abused a 13-year-old girl and took photos of it).

Although Grow pled when confronted with the overwhelming evidence of his guilt, he appears to have taken efforts to hide his crimes for years. Grow is an educated man with a knowledge of computers, particularly given that he worked from home on a computer. The evidence in the case indicates he used this knowledge to hide his identity. For example, as the sworn affidavit in support of a complaint and a search warrant in this case shows, his primary social media account used in the crimes for which he has been convicted is Snapchat. Snapchat uses end-to-end encryption making it virtually impossible for the Government to obtain images or content unless they are saved by the users. Further, Grow's account has been active since 2016, and forensic evidence indicated thousands of instances where the account was used in only the years preceding Mr. Grow's arrest. However, subpoena results show only five instances where an actual IP address could be identified as having been associated with the account. This is indicative of the use of a virtual private network ("VPN"), or other means used to hide a user's true location.

Given Grow's conduct, it is clear that the nature of the offense justifies a substantial sentence no less than the high end of the Guidelines range.

    ii.    <u>History and Characteristics of the Defendant</u>

Although Grow claims some violence in his childhood home growing up and some alleged childhood trauma, his background does not offer much more than the hardships many individuals endure. To be sure, the Government expects Grow to produce numerous reports of various

maladies and trauma in advance of sentencing, but these would be self-serving at this stage. Moreover, it would do little to mitigate against the horrors Grow inflicted. There is simply nothing in Grow's past that mitigates the severity of his offense to the degree that any type of reduced sentence is appropriate.

    **C.**    **Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense – §3553(a)(2)(A).**

An adult man engaging in an illegal sexual conduct with troubled teenage girls is committing an extremely serious crime. This is a terrible crime and a significant sentence is necessary to reflect its seriousness, to promote respect for the law, and to provide just punishment for this calculated sexual offense.

    **D.**    **Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct – §3553(a)(2)(B).**

As noted above, Grow planned and executed his crimes over a lengthy period of time and—but for the intervention of law enforcement—would have continued to violate his victims. Crimes like Grow's are often hatched on the internet and involve children (like the Minor Victims here) who take elaborate steps to avoid detection by their parents and caregivers. These crimes prey on vulnerable victims and can be very difficult to detect—just as Grow's cultivation of the minor victims went undetected for months until law enforcement discovered Minor Victim 1's relationship with Bye. Because detection of these serious crimes is so difficult, severe sentences are necessary to deter them. For that reason, too, this Court should impose a substantial sentence in this case.

### E. Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant – §3553(a)(2)(C).

Sex crimes against children are among the vilest crimes and this Court should take particular care to protect the public from men who commit them. "Sex offenders are a serious threat in this Nation." *McKune v. Lile*, 536 U.S. 24, 32 (2002). For example, between 1980 and 1994, the population of imprisoned sex offenders increased at a faster rate than for any other category of violent crime. *Id*. (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 18 (1997) (hereinafter Sex Offenses); U.S. Dept. of Justice, Federal Bureau of Investigation, Crime in the United States, 1999, Uniform Crime Reports 24 (2000)). "As in the present case, the victims of sexual assault are most often juveniles. When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id*. Additionally, the U.S. Sentencing Commission reports, likely as a result of the increase in technology, a 422% increase in the number of offenses involving the production of sexually explicit images of children. *See* U.S. Sentencing Commission, Federal Sentencing of Child Pornography: Production Offenses 3 (October 2021) (hereinafter Production Offenses). There is an acute need to protect both the minor victims and the general public from Grow's future criminal conduct. The only way to do that is to impose a substantial sentence in this case.

### F. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct – §3553(a)(6).

Substantial sentences are routine in human trafficking and child exploitation cases, particularly those involving multiple victims and the production of child pornography. *See* Production Offenses at 3 ("Child pornography production offenders generally received lengthy sentences."). Thus, a substantial sentence at no less than the high-end of the Guidelines range

would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### III.  CONCLUSION.

Hart Grow participated in online forums so he could target vulnerable children whom he could manipulate into engaging in graphic online sexual conversation and ultimately grooming the children for the purpose of committing illegal sex acts. For all the reasons set forth in 18 U.S.C. § 3553(a), this Court should impose a significant sentence of no less than the high end of the applicable Guidelines range to be followed by lifetime supervision.

RESPECTFULLY SUBMITTED,

COREY F. ELLIS
UNITED STATES ATTORNEY

BY: /s/ *Derek A. Shoemake*
Derek A. Shoemake (Fed. Id. 10825)
Assistant U.S. Attorney
401 West Evans Street, Room 222
Florence, South Carolina 29501
(843) 665-6688
Derek.Shoemake@usdoj.gov

BY: /s/ *Amy Bower*
Amy F. Bower (Fed. Id. 11784)
Assistant U.S. Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
(843) 727-4381
Amy.Bower@usdoj.gov

Florence, S.C.
June 14, 2022